One man's vulgarity is another's lyric. Those words were true when Justice Harlan spoke them and wrote them 48 years ago, and they are equally true today. He spoke them in the Cohen v. California case. In that case, one man's vulgarity was, quote, fuck the draft. In this case, one man's vulgarity is similar, that being Mr. Waggy. But even 48 years ago, the Supreme Court recognized that words that some may find offensive, taboo words, as they're referred to in one of the amicus briefs, are nevertheless protected by the First Amendment. The real question here is whether what the statute criminalizes is conduct that happens to use words to achieve it, or whether it's expressive. And that, to me, is the crux of the problem, because certainly your money or your life is the use of words, but it's not protected expressive conduct. So looking at the Washington statute as a whole, the telephone harassment statute, almost all of it has to do with things that are either not about the expressions themselves. For example, you can, if you're repeatedly calling in the middle of the night, it doesn't matter whether you even say anything. So why isn't this statute aimed, like the statute in Ossinger, at conduct that happens to use words? Understood, Your Honor. The statute itself, if we look at it, is broken up into three sort of subparts. Right. And I would agree that subpart B, which talks about repeatedly calling, whether or not a call comes in, that's content neutral. We can agree on that. I would also agree that part C, which talks about threats, provided they're true threats, again, is outside the analysis. But if we look at paragraph 1, which refers to using any lewd, lascivious, profane, indecent, or obscene words or language. But that doesn't stand alone. It's coupled with the beginning of the statute, which requires the intent to harass, intimidate, torment, etc., which is the point of the statute. It doesn't just broadly say, well, if you walk around using obscene language, that's a crime. It's only if you intend to harass or threaten. Certainly, Your Honor. But if we look to the Washington Supreme Court case in Bellevue v. Lorang, which we cited, that case specifically addressed this issue. And it did so in the context of actually looking at the word profane. But nevertheless, it analyzed this statute. And if this was purely a conduct-driven statute, Bellevue v. Lorang would have come out the other way. It would have come out in favor of the ordinance. And, in fact, it didn't. It analyzed the portion in subparagraph A as being speech. And then it addressed whether or not that was protected speech. Let me back up a minute and ask you to address this question first. Are you mounting a facial challenge or an as-applied challenge or both? Your Honor, I don't think we need to reach a facial challenge in this case. I think we can handle it by an as-applied challenge. Well, what does that mean? Is the answer yes or no? I'm raising an as-applied challenge, Your Honor. All right. In the Lorang case, what the Supreme Court specifically did was look to the using any lewd, lascivious, profane, et cetera language, identified profane as the issue in that case, and then proceeded to look at whether profane language is constitutionally protected. And the court easily found that it was, found that the statute was overbroad, and overturned the conviction on that ground. In essence, what happened here in this case was that, admittedly, they removed the word profane from the jury instructions, but they left in the other words lewd, lascivious, and indecent, all of which are constitutionally protected. And we see that in the Sable Communications case, in which the Supreme Court ultimately found that indecent speech that didn't meet the definition of obscene speech as defined in Miller is protected speech. How do you distinguish the analysis that we should apply here from Ossinger? Your Honor, I think that the issue, I think we have several issues regarding conduct, or the allegations of conduct here. And I think that the problem with the conduct analysis, the district court implied that the government urged upon it in this case, was that it looked to only what I would call subparagraph one. And it said to deal with every person who, with intent to harass, et cetera, makes a telephone call. And it said that's conduct the crime is committed once a person makes a telephone call. That might be correct if we were analyzing a 1B case, because in a 1B case, the call never need, in a sense, be completed. Nobody ever needs to speak. The problem that we have here is that we have actus reus language in subparagraph A. Namely, that you have to use particular types of language. So if a person, for example, were to make a call with the intent to harass, et cetera, with the intent to use lewd language, it would not necessarily satisfy the statute. Can we get back to Judge Graber's question, though? There's this case, Ossinger, from the Ninth Circuit that Judge Graber was on the panel. And it seems to me a tough case for you to overcome, and you've got to distinguish it. So how would you distinguish that case? Now, it wasn't cited in the briefs of either of the parties here, but one of the amicus did cite the case, the 2014 decision. It concerns the federal stalking statute, which is different in some ways. But there was both an overbreadth expressive conduct or expressive words argument made and also a vagueness challenge. If you don't know the answer, that's fine. Your Honor, I will candidly say I don't have an answer immediately ready. If I come up with an answer, I will offer it one way or another. So I think that the critical issue that the Court has raised, which we agree with, is the problem of defining this speech, an expressive speech, as conduct, and that has just continuously been rejected by the Supreme Court over and over again. I would like to turn briefly to the jury instruction issues before I run out of time. Again, there were two essential jury instruction problems, one of which I think picked up on and exacerbated the issue regarding indecent speech, namely the definition of indecent speech that was given here that, in essence, allowed speech to be determined to be indecent if it was, quote, not decent or inappropriate. The problem with that is, again, that goes far beyond First Amendment law. It also creates vagueness problems because what one juror might find inappropriate or not decent, another juror would clearly feel differently. The second issue, which we touched on, was the issue that arose regarding the specific intent that was needed to commit this crime. It was determined under the Lilibad case that the specific intent needed to be formed at the time the call was made, and it had to be specific to a particular person. And the jury instructions which were submitted were not jury instructions agreed to by the defense. They referred to another person and that other person. The jury had significant confusion on that issue and specifically issued a question which addressed those instructions stating that who was that other person, who was the another person. There was some discussion on the record about that, and the court ultimately simply responded, please reread your instructions. We've cited a host of cases saying that when a jury has legitimate confusion over an issue, which this jury clearly did, simply telling the jury to reread your instructions was not sufficient. There was an easy fix. They simply had to be told that the individual victim in this case, Sandra Payne, was the person referred to in all of those references. So we do believe that even if the statute could be found as applied to comply with First Amendment precedent, the jury instructions alone would require a new trial. At this point, I think I'll reserve unless there's further questions. You may. Thank you. Good morning. May it please the Court, my name is Tim Holmes. I'm an assistant U.S. attorney from Spokane here on behalf of the government. So as I reviewed the defense briefs and arguments, and they launch into this First Amendment jurisprudence on speech or on the content of speech, the reason for that, and I think the reason why the defense gets to that so quickly and to some extent sidesteps and ignores the other jurisprudence, the large body of jurisprudence that deals specifically with telephone harassment, is because they make a factual assertion. And their argument is really based upon the factual assertion that this case was about a private citizen trying to petition a government agency. And that was what the trial was about. So that issue was fully vetted at trial. The defendant testified. The defense argued that. The government presented countering evidence and argument that this was really about an individual who had such animus toward the VA that he wanted to injure certain women who worked at the VA to whom he had access. And that was his intent. And the jury agreed with that. So I think the starting point has to be that this defendant intended to harass or harm through harassment the SP who was the specific individual that was targeted on April 19, 2016. And the defense amicus brief does the same thing. On page four of that brief, it starts out with a factual assertion that the facts of this case are about a private citizen trying to petition the government. So I think that the legal argument that follows both the defense brief and the reason why there's so much emphasis on speech and so little discussion about the actual body of jurisprudence on telephone harassment is because they begin by attempting to re-argue the case without making a facial challenge to the sufficiency of the evidence. So based on that, I think that there is this body of case law out there that it's fairly clear at this point in time because these statutes are not uncommon. They do differ from jurisdiction to jurisdiction. There's a federal statute that's quite a bit, I believe, broader than the state statute that was applied in this case. But that body of case law says that the intent element brings this within that umbrella of conduct that's being punished. The Washington State Supreme Court addressed this specifically in the Dyson case, State v. Dyson, which I believe was a 1994 case. But I can check to make sure. In any event, in footnote 5 of Dyson, the Supreme Court specifically addressed the question of, well, what's going to happen if somebody does call a government agency and they're upset and they use bad language? It was actually the Court of Appeals. Oh, I'm sorry. But it was 1994. Okay. Well, in any event, footnote 5 of that I think is what was probably most pertinent and most, I guess, gets to the issue most precisely, in which they point out that the defense argues, well, what's going to happen if a defendant calls a government agency and they're upset and they use bad language? And in footnote 5, the Court says, look, this intent element first has to be met, and that's the driving force behind this statute. Let me ask you to go into that a little more. I guess your position, and some of the cases say this, is that, for instance, if a person calls up the VA or whoever it was with the specific intent to harass, we'll say, right, that somehow the intent turns speech into conduct. Isn't that what those cases, isn't that what you're arguing? The intent turns speech into conduct? I have a hard time following that. Can you, I mean, explain that a little further, why that's so? The cases essentially say that the speech isn't speech. It's not, those words are not being used to convey an idea. What's what I mean? You're saying the person's state of mind turns words into conduct. That's just what you said in a little different words, isn't it? I believe that's what the case is. And tell me, how do you get there? I mean, how is, you know, if I say something harassing to some receptionist at a government office, why is it different in terms of whether I'm, you know, whether it's speech or not, what my state of mind is? My thinking can turn a word into an act. Is that what you're saying? Well, I think the Supreme Court referred to it in one of the cases as words can be essentially like a clanging garbage truck, that they're not intended to convey communication. So in that instance, they're not protected speech because they're conduct. They're essentially a kind of verbal slap, a verbal assault. And I think that's what the statutes are intended to get at, and that's the distinction that other courts have made in looking at this and saying that this is a conduct-based statute. And, yes, it is triggered by use of language, but that use of language is not protected because it doesn't convey, it's not intended to communicate anything. It's only intended to injure the person who's the recipient of it. And this is specific to telephone harassment statutes. So that's a kind of repeated refrain that comes up over and over and over again in the cases in terms of how courts have looked at it. And I don't have the Supreme Court case in mind, but I know it's cited in my brief, and I think I have the actual quote from it that talks about the clanging garbage truck. And so there is this and has been this sense that language is used for more than just to convey ideas, and sometimes it's used in a way that it's not protected and can be criminal because it's intended to cause a specific harm. Of course, no one would contend that a clanging garbage truck is speech, right, to start with, regardless of the intent. No, I understand that, but the Supreme Court was using the garbage truck as an analogy to some types of speech. So in any event, I think that's the approach that some courts have taken. That's the approach, I believe, that the Washington courts have taken. That approach was persuasive to the magistrate judge in this case and ultimately also persuasive to the district court judge because there's a body of law that supports it. It's like there's a fork in the road at a certain point, and if you have a case in which there's no intent to harass, and it's a case where somebody's trying to petition the government, you go down the expression fork in that road. If you have a case where there's an intent to harass, it forks in a different direction, and you look at the speech in a different way, you evaluate it differently. So I think that the briefs pretty fully address the body of law that talks about telephone harassment cases. I would like to get to the jury instruction issues just briefly. So on the question of how the court chose to define lewd, let me get to that. How the court chose to define lewd, lascivious, and decent, the government proposed an instruction that contained a definition drawn essentially from a dictionary. The defense proposed no instruction. They just objected to even the statutory words being included in the jury instruction. And the court looked at some state law and drew its definition from the state law. But I think the thing here that's most important is that however it was defined, and my brief, I think, goes through the defense argument in some detail to point this out, but the defense describes the defendant's own statements as offensive, as inexcusable, as inappropriate. And there is never any defense mounted by the defendant suggesting that the language used in this case didn't fit within the statutory categories. And I would argue that essentially that point was conceded by the defense throughout their argument. And again, I think it's referenced in some detail in my brief. With regard to the elements, again, the specific point that the defendant is now raising wasn't part of their formal objections to the court. They were, again, concerned about the definition of the statutory terms and their inclusion. The instruction essentially followed the Washington pattern instruction with the exception that it included the victim's name with regard to the first element. So the defense didn't object to that. They did propose an instruction that had the defendant's name repeated. And, in fact, when they argued to the jury, that's how they argued. They included the victim's name throughout their recitation of the elements. The jury did pose this question about whether or not the intent had to be specific to the victim that was identified, and the court carefully considered how to respond. And I think one of the problems and one of the conundrums generally in assessing how to respond in a situation like that is when you begin to explain one point, it can overemphasize that point and, again, lead the jury into error. Because this is a case in which the defendant had never met face-to-face this victim or any other person who testified on behalf of the VA other than the Inspector General Special Agent who testified. He hadn't met them. He didn't know what they looked like, which was an issue for the victim coming to court and finally facing the defendant and having her face shown to him. And the defendant would not necessarily know that her voice goes with that name. Now, the government had to prove that the defendant intended to harass her, which the government presented evidence, the government argued, but the government didn't have to prove that it knew her, knew her name, or anything of that nature. It's not part of the statute. It wasn't part of the elements. So I think that the court was concerned a little bit about, well, once you start getting into addressing some questions, how much further then do I need to go to also explain that it's not required that the defendant know the victim, it's not required that the defendant know the victim's name, it's just required that the defendant intended to harass that person who is the victim. The victim was referenced in the instruction. She was the only person the defendant talked to that day. Both the government and the defense argued, consistent with the precedent from Lilly Blatt, that the defendant had to have specific intent to harass that victim. And I think the fact that the jury also went out and deliberated the rest of that day into the following day and returned the verdict after lunch shows that they accepted the court's answer. Let me ask you, you've got about a minute left. About a minute. To address, I think there's an objection, on appeal at least, to instruction 11, right? That, you know, including in the definition of indecent, something is indecent if it's unseemly or inappropriate. I assume the objection is on vagueness or something like that. What's your response to that? My response is, again, that the magistrate drew that language from Washington State courts and how they had defined it. They did not, the court did not accept the government's instruction, which just drew some further definition. It's not part of the pattern instruction? No. It was drawn from case law, and those cases are cited in the government's brief that the court was looking at. But I think that, you know, the jury does have to sometimes go back and struggle with terms and apply their collective common sense. That's part of that process. Here, most fundamentally, is the problem that the defense essentially conceded that its language, that his language, fell within the statute. That was never an issue. Thank you, Counselor. Thank you. Thank you. I'd like to turn back to Judge Graber's question about Ossinger. And I really think that the primary difference between that case and this case is found in the definition of the cyberstalking statute that was at issue in that case. And specifically, if we look at that statute, and it seems to be Paragraph 2, which is the most relevant at issue here. Are you talking about Ossinger? Yes. Okay, go ahead. That what we see is a content-neutral statute. We see a statute that establishes both an actus reus, that it talks about a course of conduct, not a course of speech, a course of conduct. And we see a mens rea with the intent to kill, injure, harass, or intimidate. So, arguably, what we really have here is a statute that criminalizes what might otherwise be considered some sort of common law assault, for lack of a better term, but doing it via the Internet, cell phone, etc. But we have a content-neutral statute. This statute, I believe, would be read entirely differently if it established the intent element, and then the actus reus said, and then proceeded to speak dirty words. Because then we're delving into a content-specific statute that then has certain First Amendment protections because someone evaluating that statute has to look at the content, evaluate the words, and decide whether those words are somehow prohibited. And that's the entire distinction. Wouldn't the statute at issue here be constitutional in your view if it had the introductory material, if with the intent to harass, injure, etc.? I don't have the wording memorized, but you call somebody, end of statute. So it wouldn't matter whether, I mean, isn't that really your, it seems to me that that's what the legislature is trying to do here, except they're trying to divide it up into different bites. And so would that be okay to just say you can't call people with the intent to harass them? Your Honor, I think the, perhaps the problem then would be is there a reasonable definition of the word harass? Well, that's not, okay, but it wouldn't be because they would use words, whether they're obscene or not obscene or whatever. Well, I do think in this case the primary problem with the statute as drafted is its inclusion of the laundry list of terms, indecent, etc., that clearly are First Amendment protected categories. I think this would be a different question if the statute was limited to subparagraph A said obscene because obscene is. They're protected in certain contexts. I mean, words, I mean, to use, to go back to my example, your money or your life, if it's said by somebody to a bank teller, you know, holding your hand in a bag, is not a protected statement. If you say it here teasingly to your law partner, it's clearly not a threat and it's protected conduct, so, or protected speech. So, why doesn't the intent and the context matter in terms of? Your Honor, I think the difference there, and I believe that what your Honor is getting at is the intrinsic to criminal conduct that I think was first articulated perhaps in the, I think it's Gibboni from the Supreme Court many years ago. And it seems that that makes a certain amount of sense if, in the example of a bank robbery, where what is criminalized is the use of force to seize property from another. And words just happen to be part of it. But that's not what we have here. Isn't this, as the opposing attorney said, a form of assault? It happens to be words used to assault somebody. But why isn't that a fair analogy? Well, it doesn't seem that it's, if I can finish, I'll get there in just a second. Okay. But I think the difference in this case is that unlike the bank robbery example that your Honor uses, where the words are sort of an incidental part, the words are the crime here. And one of the amicus spoke about this more eloquently than I and said, essentially, at that point, one could criminalize criticizing a president and then say, well, yes, generally speaking, criticizing a president is protected speech, but it's part and parcel of the crime, so therefore it's okay. And that's sort of what we're saying here, which is if you call somebody and use taboo words, that's part and parcel of the crime, so therefore it's not protected. And that can't, at that point, the Giboni exception would swallow the rule any time a statute simply sought to criminalize words. To get to the assault example, assault requires either the intent or the apparent intent to use some sort of force or cause some sort of harm. But there is an intent to cause harm. That's a requirement of this statute. It's basically terrorizing someone by means of a telephone. Well, except that one of the actus reus terms is embarrass. So if you choose to embarrass somebody by saying dirty words, it seems to me that that's a far cry from pointing a gun at someone and causing them emotional psychic fear because of the fear of imminent harm. Those seem to be two completely different things where somebody might be embarrassed by dirty words, but if that were enough, then Cohen v. California should have come out differently. Or Texas v. Johnson should have come out differently because flag burning clearly would offend some people or cause them some psychic distress or harm. But under Hustle Magazine v. Falwell, the Supreme Court has made clear that simply suffering emotional harm can't be enough. If it were, all of these cases would have turned out the other way. I see I'm well over time. Thank you very much. Thank you. The case just argued is submitted, and once again, we're appreciative of the helpful arguments from both counsel. We'll take about a ten-minute recess, and Kathy, if you don't mind coming back for one second to the conference room.
judges: Tashima, Graber, Owens